## THE LUDGATE HILL.

*(District Court, S. D. New York.* June 30, 1884.)

MARITIME LIEN—SUPPLIES—SHIP'S AGENTS—SECRET AGREEMENT WITH STEVEDORE.

A supply of rope necessary for use in unloading a ship, furnished to the ship by request of the ship's agents, binds the ship to pay for it. The ship's agents have presumptive authority to procure it on account of the ship. A secret agreement with a stevedore that he shall provide and pay for all such rope does not prevent a lien therefor in favor of one who furnishes such rope to the ship on her account, at the request of the ship's agents, when he has no knowledge or notice of such an agreement.

In Admiralty.
*Beebe & Wilcox,* for libelant.
*Lorenzo Ullo,* for claimant.

BROWN, J. The rope, on account of which this libel is filed, was necessary for the use of the ship in the discharge and unloading of her cargo under the stevedore. The evidence shows that it was so used. It comes under the head, therefore, of necessary supplies, and went to the use of the ship. By a private arrangement, not known to the libelants, the stevedore did the work for all the ships of the same line, at a specified price, furnishing his own rope. This, however, did not change the nature of the service to the ship, nor diminish her actual need of the stevedore's work, and of this rope as one of the appliances necessary for that work. The evidence leaves no doubt that the libelants refused to supply the rope to the stevedore personally; and in their dealings with Seagar Bros., the agents of the ship, they referred only to a supply of the rope to the ship. One of the libelants testifies that the cashier of the agents of the line told him that it was all right, and that the bill would be paid if Williams (the stevedore) signed it as correct. The rope was accordingly furnished, and charged to the ship. The bill was certified as correct by Williams, and was rendered to the ship's agents for payment, but was not paid. In a subsequent conversation, the cashier denied that he had promised payment; but his testimony has not been obtained on this trial. The statement in his subsequent conversation, when not under oath, cannot stand against the libelant's sworn statement, that payment was promised by him when the libelants first went to the office of the ship's agents; and the charge to the ship, the certifying of the bill by Williams, and the rendering of it to the agents, are all in agreement with the libelant's testimony, and tend to substantiate its truth. Various circumstances in the testimony show that the agents of the line had general authority to attend to the bills of the ship, and to the necessary business connected with loading and unloading; and this would embrace the procuring of any needed means for that purpose, including rope such as this. It is not an unusual thing for necessary supplies to be ordered by a ship's agents in a foreign port, and I have never known a lien refused for any want of authority on their part, where the supplies actually came to the use of the ship. *The Patapsco*, 13 Wall. 329. No question would have been made in this case, except for the private arrangement with Williams; but as that was not communicated to the libelants it cannot affect them. I think they are entitled to recover, therefore, on the ground that the rope was necessary in and about the work of unloading the ship, which was necessary to enable her to earn her freight; that it was furnished to the ship, and on her credit, and not to Williams, or on his credit; and that it was so furnished by authority of the agents of the ship, and on their promise to pay for it in behalf of the ship, and that their promise bound the ship as well as themselves.

Decree for the libelants for $128.96, with interest from December 15, 1883, with costs.