## THE BURTON.

### CONSTANTINE et al. v. THE BURTON.

(District Court, D. Massachusetts. February 10, 1898.)

### No. 754.

MARITIME LIENS—WHARFAGE AND SERVICES IN DISCHARGING—DEALING WITH BROKER.

Persons who furnish wharfage and services in discharging, on the order of a broker, who merely states that he is the ship's agent, are placed upon inquiry as to the source of his authority, and are chargeable with notice that he was acting for the charterers, who were required by the terms of the charter party to pay these charges.

This was a libel by Constantine & Co. against the steamship Burton to recover for wharfage and services in discharging the vessel.

John D. Bryant, for libelants.
Carver & Blodgett, for respondent.

BROWN, District Judge. A lien is claimed upon the British steamship Burton for wharfage and services in discharging the vessel in the port of New York. The Burton was under a time charter requiring the payment of such charges by the charterer, the New York, Mobile & Mexican Steamship Company. The libel avers that the wharfage and services were furnished at the special instance and request of the owners. The evidence shows that the libelants received a telephone message from the office of F. J. Lord, a ship broker and steamship agent, that he wished to see the representative of the libelants with regard to discharging a vessel. Libelants' secretary thereupon called at Mr. Lord's office, where he saw a Mr. Duckett, then connected with Mr. Lord in business. He informed Mr. Duckett that he had called in answer to the telephone message, and inquired the name of the vessel, which Mr. Duckett informed him was the "Burton." He then asked if Mr. Lord was the agent, and was informed by Mr. Duckett that he was. After a few minutes, he saw Mr. Lord, who had been engaged when he entered the office; and Mr. Lord told him he had the Burton, and inquired if he had a wharf at which to dock her, and urged him to reserve it, which he agreed to do. Mr. Lord also said he wished libelants to discharge the vessel, and to measure her cargo to determine the quantity, and asked if those services would be rendered at the usual rates, to which libelants' representative responded that the services would be rendered at such rates, and then left. This conversation occurred more than 24 hours before the steamship arrived at the libelants' dock, where she was discharged. There were no dealings with the master, nor were the bills presented for his approval.

As Lord, unlike a master of a vessel, was clothed with no ostensible agency, or apparent authority to bind the owners or the vessel, the libelants were subject to the ordinary rule of law, requiring them at their own risk to inform themselves of the actual authority of the agent. So far as appears, there was no reason for the libelants to assume that Lord was acting for the owners, rather than for the New York, Mobile & Mexican Steamship Company, the charterer, except the ambiguous statement of Duckett that Lord was "the agent." The libelants were dealing with a third person, not the master, not the owner, and, so far as appears, known to them simply as a ship broker, upon whose request they had performed similar services for other vessels. It does not appear that they knew whether the Burton was a foreign or a domestic ship, or whether her owners were resident at the port of New York, or at a foreign port. The duty of reasonable inquiry rested upon the libelants. The Valencia, 165 U. S. 264, 270, 17 Sup. Ct. 323; The Kate, 164 U. S. 458, 17 Sup. Ct. 135; The Suliote, 23 Fed. 919, 926. Had this inquiry been made, they undoubtedly would have learned that the vessel was under a time charter requiring the charterer to pay these charges, and that the vessel was in no need of credit, as her master had funds. There were ample time and oppor-

tunity for inquiries, and the libelants' rights must be determined by the facts as they existed. In The Ludgate Hill, 21 Fed. 431, cited by libelants, the fact of a general agency for the owners was proved. See The Suliote, 23 Fed. 919–926. In the present case it is not established that Lord was the general agent of the owners, or that in the transaction he assumed to act for the owners rather than for the charterers. To support their libel, the burden is upon the libelants to show that the person with whom they dealt was acting for the owners, and with actual or ostensible authority from them, and that it was intended to pledge the credit of the vessel. The Valencia, 165 U. S. 264, 271, 17 Sup. Ct. 323; The St. Jago de Cuba, 9 Wheat. 409, 416, 417. This, in my opinion, they have failed to do. I see no reason for distinguishing between the claim for wharfage and that for services. They were both contracted for at the same time, and with the same person. The Kate, 164 U. S. 458, 470, 17 Sup. Ct. 135. The libel will therefore be dismissed, with costs.