Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 Whether the coal was furnished on the credit of the vessel, or of the owners, is the only point of inquiry in this case. The case itself is not without its embarrassments, for the evidence, in some of its aspects, is not consistent with either theory, but the weight of it, in our opinion, enables us to assert the lien against the ship.
 

 It is undisputed that the Patapsco was in a foreign port, and that the coal was ordered for her, specifically by name, and delivered to the oflicers in charge of her. It is equally free from dispute that the supply of coal was necessary— indeed, indispensable—to enable her to make her voyage at all. In such a case the inference is, that the credit was given to the vessel, unless it can be inferred that the master had funds, or the owners had credit, and that the material-man knew of this, or knew such facts as should have put him on inquiry.
 
 *
 
 There is no reason to suppose that the master had funds, or the owners of the line credit, nor that the libellant was guilty of laches. On the contrary, it is in proof that the company which owned the line of steamships was, at the date of these transactions, hopelessly insolvent, and were borrowing large sums of money on a mortgage of their steamers, away from home, and in the very city where the libellant resided. It would be strange if the libellant
 
 *334
 
 did not know this condition of things, and, in the absence of proof on the subject, it is a reasonable inference that he did. If he had this knowledge it would be a violent presumption to suppose that he relied on the credit of the company at all- for the supplies which he furnished. The company running the steamers was a distant corporation, of no established name, and without personal liability in case the enterprise recently undertaken should prove a failure, and it is hard to believe that a large and intelligent coal merchant in Baltimore, in dealing with this corporation, intended to renounce his claim against the steamers in case he was not paid. It is very clear that there was no credit to the company at the time of sale, because the coal was sold for cash at the lowest market price'. And when the libellant waived his privilege of cash on delivery, and put the coal on board the steamship, the presumption of law would be that he thereby gave credit to the steamship, and not to the owners thereof, inasmuch as the supplies were furnished in a foreign port.
 

 If the credit was to the vessel there is a lien, and the burden of displacing it is on the claimant. He must show, affirmatively, that the credit was given to the company to the exclusion of a credit to the vessel. • This he seeks to do by the form of charge in the libellant’s journal and ledger. If it be conceded that these entries tend to support this position, they are far from being conclusive evidence on the subject. Entries in books are always explainable, and the truth of the transaction can be shown independent of them. The form of charge in any book of original entries does not appear, as the day-book was not called for by the claimants, nor are the “invoices” which the libellant was directed to furnish with the coal produced. But, from the form of entry in the journal itself (where the amount furnished to each vessel is set opposite to its name), we are led to the conclusion that the day-book entries which are thus journalized were debited to each steamer by name. If this be so, the journal entries are not inconsistent with the idea of the credit being given on the security of the ship. More
 
 *335
 
 especially is this apparent when it is proven that the reason why monthly accounts were made out to the steamboat company in bulk was for the sake of convenience, and to save a useless accumulation of bills. There is nothing besides this journal entry to indicate that the coal was furnished on the personal credit of the company; and, as the other facts in the case are in favor of a charge direct to the steamship, we do not think the legal inference of credit to the ship is removed.
 

 The lien of material-men for supplies in a foreign port is of so high a character that, in the case of
 
 The St. Jago de Cuba
 

 *
 

 it was protected, along with that of seamen’s wages, against a forfeiture which had accrued to the United States; and the recent decisions in this court have had the effect to place this lien on a more substantial footing than some previous cases seem to have left it.
 
 †
 

 On the whole, while we concede that the case is not free from difficulty, we are not disposed to disturb the decree of the Circuit Court, in any particular. It is accordingly
 

 Affirmed.
 

 *
 

 The Lulu, 10 Wallace, 192.
 

 *
 

 9 Wheaton, 409.
 

 †
 

 The Grapeshot, 9 Wallace, 129; The Lulu, 10 Id. 192; The Kalorama, Id. 204.