## THE GEN. MEADE.

### (Circuit Court, D. Nebraska. July 23, 1884.)

1. **LIEN ON VESSEL—WAIVER.**
    A lien which has accrued upon a vessel for supplies furnished it, is not waived or lost by the acceptance of commercial paper belonging to the lessees of the vessel.

2. **ADMIRALTY PRACTICE—PLEADINGS AND PROOF—VARIANCE.**
    When the allegations in an answer are that the owners leased certain boats to a corporation for the term of three years, while the proof disclosed separate charter-parties for each year, including the one in question, there is not such a variance as will be regarded.

3. **FRAUD ON CREDITORS—LEASE OF VESSEL—EVIDENCE.**
    When the owners of boats lease them to a transportation company, evidence of an interest manifested by the owners in the success of the company is not a sign of bad faith in making the lease, or of an attempted fraud upon creditors.

4. **LIBEL—CONTRACT FOR SUPPLIES—EVIDENCE.**
    In a libel against a vessel evidence examined, and *held* to show that supplies used upon a boat leased by a transportation company were sold to the company and on its credit, and not on that of the boat.

5. **SAME.**
    Where supplies are furnished to and upon the credit of a transportation company, a libel cannot be maintained against a leased boat upon which they were used.

In Admiralty. On exceptions to the report of the referee.

*T. P. Murphy,* for libelants and intervenor.

*J. M. Woolworth,* for claimants.

BREWER, J. This was a libel filed against the steamer Gen. Meade for supplies furnished by the libelants in the season, and mainly in the month of April, 1882. The supplies were furnished at Bismarck, in the territory of Dakota, a foreign port. That the supplies were furnished is undisputed, but the contention of the claimants, who are the owners of the boats, was and is that they were sold to and on the credit of the Northwestern Transportation Company. After the seizure of the boat, the intervenor appeared and filed his claim for services as watchman at the port of Covington, in the state of Nebraska, also a foreign port. The case was tried in the district court, and a decree rendered in favor of the libelants and the intervenor. From this decree the claimants appeal to this court.

The case was submitted to the district court upon the testimony of the libelants, and apparently the question submitted to that court was whether, after the lien had accrued by the furnishing of the supplies,

it was waived or lost by the mere acceptance of commercial paper of the transportation company. That question the district court properly answered in favor of the libelants. After the appeal was taken, the claimants took the testimony of the general manager of the transportation company, and the case was, by consent, referred to the Hon. James W. Savage, to report on the law and fact. His report was filed on the seventh day of May, 1884, finding in favor of the claimants, and that the supplies were furnished on the credit of the transportation company, and not on that of the boat. Exceptions were filed to this report, and the case is now before me on those exceptions.

It is clear, from the testimony, that the owners in fact leased this boat and others to the transportation company, and that they were by such company operated during the season in question, as well as during the two prior years. It is true that in the argument some insinuations were thrown out against the *bona fides* of this transaction, and the letters of some of the owners were referred to as indicating an active interference in the management of the boats. I see nothing in the testimony of these letters to justify this. Doubtless, the owners, as owners, were interested in the success of the transportation company, for in its success was their assurance of pay for the use of the boats. Further, the owners of the boats, or some of them, at least, were largely interested as stockholders of the transportation company, and, of course, interested as stockholders in its success, and I see nothing which justifies any more than such natural and proper interest.

Again, it is said that there is a variance between the allegations in the answer of the claimants and the testimony in this: that the answer alleges that the owners leased the boats to the company for the term of three years, while the testimony discloses separate charter-parties for each year, one of them covering the year in question. This is a mere technicality, and must be disregarded.

Further, it is insisted that the transportation company was a corporation organized under the laws of Iowa; that it does not appear that its charter was ever filed in the territory of Dakota, and therefore that it there had no legal existence. I do not see that that is material, for, whether corporation or merely partnership, it was composed of different persons than the owners of the boats, and was therefore a different legal entity, capable of leasing from the owners and transacting business on its own account. I think, therefore, there is no escape from a consideration of the main question, and that is whether the supplies were furnished to and upon the credit of the boat, or to and on the credit of the transportation company. The libelants testify that they sold to the boat and on its credit, and not to the transportation company, and this was the testimony on which the decree of the district court was entered. But it appears from other testimony that they had, in prior years, furnished supplies to

this and other boats similarly situated, on sales to and on the credit of the transportation company. The libelants claim that in January, 1882, they wrote to Iowa to ascertain the condition of the transportation company, and, from information received there and elsewhere, doubted its solvency, and thereafter sold on the credit of the boat; but, notwithstanding this testimony, it appears that, when they sold these supplies, they took drafts drawn by the clerk of the boat on the general manager of the transportation company, and that these drafts were renewed from time to time until the failure of the company. It does not appear that they ever notified the company or the officers of the boat that they intended to change the course of business that had been pursued the prior years, and, in fact, the manner of the business was continued the same. It also appears that the company had, during these years, a general agent at Bismarck who looked after the business of the company there, and was known to be such by the libelants, though, probably, the supplies were, in fact, ordered by the captain, steward, or clerk of the boat. Now, I think it very strong inference, when business is shown to have been conducted for one or more years in a certain way, with credit given in those transactions to a certain party, and the business is conducted the ensuing year, in fact, in the same way, with no notice given of any intent to change the debtor, that there was in fact no change. I am strengthened in this conclusion by the letters and telegrams of the libelants sent to the general manager of the transportation company subsequent to the sale of these supplies. Their general tenor and effect is that of communications from a creditor to a debtor.

The proctor for the libelants lays great stress on the fact that the supplies were charged on the book of the libelants to the steamer, and that bills were made out in the name of the steamer and handed to the clerk. This, standing by itself, is of course testimony of weight; but when it is coupled with the fact that on presentation of the bills a draft drawn by the clerk on the general manager was accepted, and when it is borne in mind that naturally it would be for the convenience of both libelants and the company to keep the accounts for each boat separate, the testimony will be seen to have much less weight. Of course, if the goods were sold to and on the credit of the transportation company, it cannot seriously be contended that this libel can be sustained. See *The Grapeshot*, 9 Wall. 129; *The Lulu*, 10 Wall. 192; *The Patapsco*, 13 Wall. 329.

I think, therefore, the exceptions to the report of the referee must be overruled, and the libel dismissed, at the cost of the libelants.

So far as the claim of the intervenor is concerned, under the stipulation of the parties I think it must be sustained; that he has a lien which must be satisfied and discharged out of the boat. I understand that the two cases of the same libelants *versus* the steamer Gen. Terry and *versus* the steamer Nellie Peck are precisely similar, and the same decision is announced for those cases.