## THE O. H. VESSELS.

(District Court, E. D. Pennsylvania. March 16, 1910.)

No. 39.

1. MARITIME LIENS (§ 11*)—REPAIRS—WHAT CONSTITUTE.

Providing a barge with a cover to protect her cargo from the weather to fit her for a particular business constitutes repairs, and not construction.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 15; Dec. Dig. § 11.*]

2. MARITIME LIENS (§ 30*)—REPAIRS.

Repairs made on a vessel in a foreign port under a contract with a charterer, but confirmed by the master and with the knowledge of the managing owner, entitle the repairer to a lien, although the charter party contained a provision, not known to him, and of which he was not notified, that they should be made at the expense of the charterers.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 37, 38; Dec. Dig. § 30.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by John Kramer's Sons against the barge O. H. Vessels. On final hearing. Decree for libelants.

Henry R. Edmunds, for libelants.
Willard M. Harris, for respondent.

J. B. McPHERSON, District Judge. The testimony in this case is conflicting upon several material points, but I shall not discuss it in detail. To find the facts appears to be more important than to refer specifically to the evidence by which they seem to be established.

The O. H. Vessels is a steam barge registered at the port of Wilmington in the state of Delaware. In February, 1909, she was chartered by Luther R. Vessels, the managing owner, to H. J. Schock and F. W. Litchfield, and was under the command of John W. Kelly, the master appointed by the charterers. She was then an uncovered boat, and as the charterers desired to use her in transporting perishable freight on the Delaware river it was necessary to protect her from the weather. In other words, while it was desired to fit her for a particular kind of business, no alteration was contemplated that would materially change her construction. Essentially, nothing was to be done except to provide a cover that would protect the cargo from the wet and the heat, and a change so slight should, I think, be described as repairs, and not as construction. The Iris, 100 Fed. 104, 40 C. C. A. 301; The Ella (D. C.) 84 Fed. 471.

Delivery of the boat had been promptly made to the charterers, and toward the end of February she was in the port of Philadelphia. A contract to do the work referred to was made in that port with the libelants, John Kramer's Sons, and the needful repairs were accordingly put upon the boat during the month of March. Soon afterwards the charter was apparently abandoned, the barge was surrendered to her owners, and the present action was brought to determine whether the boat can be properly charged with a lien for the libelants' bill. As it seems to me, there is little room for doubt upon this point. It is true that the charter party provides that the barge is to be delivered by a specified date "for the purpose of having such improvements made at (the charterers') own expense as will enable said steam barge to properly carry perishable freight"; but the existence of the charter party was not known to the libelants, and they were not informed that the repairs were to be made at the charterers' own cost. The contract was originally made with Litchfield, but before the work was begun the master of the barge confirmed the agreement, and the managing owner, who was employed on board as the engineer, also knew of it and gave the libelants clearly to understand that the boat could be held for their bill in case the money could not be collected from the charterers. As it seems to me, the situation is briefly this: A boat is under charter, and repairs are needed in a foreign port. The charterers are under obligation to pay the cost, but the libelant has no knowledge of this provision. The master of the boat in effect becomes a party to the original contract, and the managing owner of the boat, being on board and having full knowledge of everything that is done, allows the repairman to believe that he will have a lien for

the cost of his work. If under such circumstances the boat is not bound, it is not easy to see how a lien for repairs can ever attach. All the elements of such a lien are present. The repairs are necessary, and the work is done in a foreign port, where presumably a lien will attach; the master agrees that the work shall be done, and takes part in it by continually giving orders and by superintendence: the managing owner is present, has full knowledge of the situation, also gives orders, and directs how part of the work shall be done, and practically agrees to a lien if the charterers do not pay. In support of the barge's liability, it is, I think, only necessary to refer to The Emily Souder, 84 U. S. 670, 21 L. Ed. 683, Insurance Co. v. Baring, 87 U. S. 163, 22 L. Ed. 250, The Patapsco, 80 U. S. 329, 20 L. Ed. 696, and The Vigilant (C. C. A., 3d Circuit) 151 Fed. 747, 81 C. C. A. 371. To these may be added The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, and Judge Bradford's careful and satisfactory opinion in The Ella, supra.

A decree may be entered in favor of the libelants, with costs.