was being violated, and for the purpose of discovering the fact whether or not the plaintiff in error was engaged in such violation, the inspector wrote several communications of the nature of decoy letters, which are set forth in the record, asking the plaintiff in error to send him through the mail certain books of the character covered by the statute, which the plaintiff in error did, as is alleged by the prosecution, and as has been found by the verdict of the jury. This has been held to constitute no valid ground of objection."

The excerpt from the Grimm Case is repeated in Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023. The stipulation does not disclose that the defendant here has ever sent "Sulfox" in interstate shipment other than the two bottles to Eaton in response to his letter. Eaton's failure to induce the defendant to violate the statute by shipping to the druggist, his letter to the defendant, the absence of facts as a basis from which he could believe or suspect that the defendant had on other occasions violated the statute, and the stipulation causes me to reach the conclusion that he wrote the letter to the defendant, not for the purpose of discovering violations but with the intention and purpose of inducing the defendant to violate the statute, and that on these facts Grimm's Case is not an authority in support of the prosecution, and that in the interests of a sound public policy the defendant should be found not guilty and discharged. Woo Wai v. U. S., 223 Fed. 412, 137 C. C. A. 604; Sam Yick v. U. S., 240 Fed. 60, 153 C. C. A. 96.

---

## THE DANA.

(District Court, E. D. New York. February 21, 1921.)

**Maritime liens ⬦28—Right to lien for coal furnished on order of charterer.**
    Libelant, who furnished coal to a steam lighter under charter requiring her return free from any liens accruing during the charter period, on orders from one representing both charterer and owner, who told him of the charter, *held* entitled to a lien under Act June 23, 1910, §§ 1, 3 (Comp. St. §§ 7783, 7785).

In Admiralty. Suit by B. F. Guinan, Incorporated against the steam lighter Dana. Decree for libelant.

Foley & Martin and James A. Martin, all of New York City, for libelant.

Gilroy & Townsend and Richard Townsend, all of New York City, for claimant.

CHATFIELD, District Judge. The libelant supplied coal to the Dana, which was owned by the Weehawken Dry Dock Company, and which had been chartered to the Atlantic Ship Salvage Corporation for certain work off the coast of Long Island during the summer of 1919. The manager of the claimant's lighterage department was acting under temporary employment as purchasing agent or manager for the Salvage Corporation, and ordered the coal in question. In so doing he had conversations with the vice president of the libelant, in which

evidently the fact of a charter of the boat by the Salvage Corporation must have been discussed or understood, and the credit of the Salvage Corporation considered.

The claimant shows that the charter contained the customary provision that the charterer was to return the boat in the same condition as received, free from all claims and liens which may accrue during said charter period. The charterer was not only an owner pro hac vice during this period, but evidently the officer ordering the coal represented the charterer as well as the claimant, and therefore is within the class of persons who may, like the master, order necessaries and supplies for the benefit of the vessel, and whose act will bind the vessel, unless, under section 3 of this statute (Comp. St. § 7785), the person furnishing the credit is shown to have known, or could by reasonable inquiry have ascertained, that the person ordering the supplies did not have authority to bind the vessel. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. ——, decided in the Supreme Court of the United States October 11, 1920; The Hatteras, 255 Fed. 518, 166 C. C. A. 586.

In the case of the South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386, it was held that a charter party, requiring the charterer to pay all expenses and save the owner harmless from liens, presumed authority of the charterer to bind the vessel for necessary supplies, and that denials and warnings from the owner could not defeat a lien, if the supplies were furnished to the vessel upon the vessel's credit when ordered by the master or charterer.

If the supplies were not ordered by the master, but by a person who represented the charterer, and who also in warning the customer as to the solvency of the charterer was attempting to safeguard the interests of the owner, there would be nothing from which the materialman, supplying coal, would have reason to infer that supplies sold to the vessel would not be a lien upon the vessel. In fact, the very warning against selling goods directly on the credit of the charterer would lead the materialman to depend upon his lien, and to sell the goods solely on the credit of the vessel, rather than upon the credit of the person whose solvency was questioned. The South Coast, supra.

The facts in the present case do not show any reliance upon nor personal credit given to the charterer. The circumstances were all those which had existed when supplies had been ordered for various vessels owned by the Weehawken Dry Dock Company, and nothing would rebut the presumption and the positive evidence that credit was given to the vessel, unless definite language had been proven, indicating that an express agreement by the charterer to pay the bill was entered into, and that no lien was to be sought. In fact, a lien might have existed, even though an additional contract in the nature of a guaranty was made. The Piedmont Coal Co. Case, supra; The Bronx, 246 Fed. 809, 159 C. C. A. 111. In the Hatteras, 255 Fed. 518, 166 C. C. A. 586, the Circuit Court of Appeals for this circuit has stated that the presumption established by the statute of June 23, 1910 (Comp St. §§ 7783–7787), may be rebutted, unless the supplies be ordered by the ves-

sel's master, ship's husband, or other person in charge of the vessel at some place where the owner is not present. But such rebuttal must show facts from which it can be inferred or by which it is proven that credit was not given to the vessel, or that the charter of the vessel, like a time charter (Curacao Trading Co. v. Bjorge [C. C. A.] 263 Fed. 693), does not make the charterer the owner pro hac vice, and that the charterer has no authority, in the absence of the ordering of supplies by the master, to bind the vessel's credit.

The libelant may have a decree.

---

### THE WALTER ADAMS.

(District Court, D. Rhode Island. March 9, 1921.)

No. 1359.

Admiralty ☞126—Premium on appeal bond taxable as costs.

    The amount paid as premium on an appeal bond, required by rule 13 of the Circuit Court of Appeals, First Circuit (150 Fed. xxxix, 79 C. C. A. xxxix), is taxable as costs, where appellant prevails on the appeal and is awarded costs.

In Admiralty. Suit by the Piedmont & Georges Creek Coal Company against the fishing steamer Walter Adams. On libelant's objection to clerk's taxation of costs. Overruled.

Frank Healy, of Providence, R. I., for libelant.
Charles R. Haslam, of Providence, R. I., for claimant.

BROWN, District Judge. The libelant objects to the clerk's taxation as costs of an item of $120 paid for premiums on appeal bonds. These were required by rule 13 of the Circuit Court of Appeals (150 Fed. xxxix, 79 C. C. A. xxxix). The claimant, who prevailed upon appeal, was put to this expense in order to comply with a rule of court. The Gov. Ames, 187 Fed. 40, 48, 49, 109 C. C. A. 94, and The Reliance (D. C.) 189 Fed. 416, related to premiums on bonds given to release a vessel, and may be thus distinguished from the present case.

The question of the allowance of costs in the federal courts was considered by the Supreme Court in Re Peterson (June 1, 1920) 253 U. S. 300, 40 Sup. Ct. 543, 64 L. Ed. 919, in which was cited the decisions in the First Circuit, Primrose v. Fenno (C. C.) 113 Fed. 375, Fenno v. Primrose, 119 Fed. 801, 56 C. C. A. 313, and Houlihan v. Corporation of St. Anthony (C. C.) 173 Fed. 496; Id., 184 Fed. 252, 106 C. C. A. 394.

Chapter 226, § 2, of the General Laws of Rhode Island, is as follows:

"Sec. 2. Any court or officer whose duty it is to pass upon the account of any person or corporation required by law to give bond may, whenever such person or corporation has given any such surety company as surety upon said bond, allow in the settlement of such account a reasonable sum for the expense of procuring such surety."

---