## THE COASTER.

(District Court, W. D. Washington, N. D.   June 4, 1921.)

No. 5593.

**Maritime liens ⚙⇒24—Furnisher of supplies to charterer not entitled to lien.**
Where libelant for five years had furnished oil supplies to a canning company for the operation of a large number of motor launches, which it chartered during the canning season, a mere change by libelant in its bookkeeping, by making the charges against each boat and sending the bills in care of the company, which received and promised to pay the same, *held* not to entitle libelant, which had knowledge that the company had no authority to bind the boats, to a lien under Act June 23, 1910, §§ 1, 3 (Comp. St. §§ 7783, 7785).

In Admiralty. Suit by the Standard Oil Company against the launch Coaster; Ole Hoeck, claimant. Decree for respondent.

Edward H. Chavelle, of Seattle, Wash., for libelant.

Reynolds, Ballinger & Hutson, of Seattle, Wash., for respondent and claimant.

NETERER, District Judge. During the year 1919, from July 1 until October 15, the tug Coaster was under oral charter with the San Juan Canning Company, for the use of which the Canning Company agreed to pay a stipulated sum covering the period of service. The Canning Company was to pay for all supplies, fuel, and crew, and all damages occasioned to the boat. A. T. Hoeg was in the employ of the Canning Company during the year 1919, in the capacity as buyer of fish, overseer of various parts of the fishing business, and likewise operating the launch Coaster. The boat, when not operated under this charter, was employed by the owner in such water traffic as could be obtained. The libelant maintained an oil station at Friday Harbor, the seat of the Canning Company, and furnished supplies to the boats employed by the Canning Company, including respondent, throughout the year. From July 1 to November 15, the account was rendered to the Coaster °/₀ San Juan Canning Company, and the mail was received by the Canning Company. During the other months of the year the account was rendered to the claimant and paid by him. No demand was made of the claimant for payment of the fuel furnished covering the period in issue until July 23, 1920, when the following letter was addressed to him:

"We are advising you of unpaid account on our books against your launch Coaster, in the amount of $646.59, contracted while operating for the San Juan Canning Company in 1919. We have been unable to make collection from the above Company, and would ask that you kindly arrange to take care of this account, sending us a check direct, or making settlement at our office."

During each year from 1913 inclusive to 1919, the Canning Company employed the boat of the claimant, with others, paying for all supplies and fuel, which was furnished by libelant to the Canning Company upon general account. On the left-hand column of the ledger of the

libelant appears the following account, in the manner below indicated, stars denoting omissions:

```
Names
*         *         *         *         *

San Juan Canning Co.
*         *         *                   *

For delivery to boats
keep separate from Cannery
5/5/19  (Credit Dept.)
*         *         *         *         *

Lch Coaster
     % San Juan Canning Co.
*         *         *         *         *
```

In this same column appear the names of 35 other launches operated by the San Juan Canning Company.

Prior to July, 1919, the agent of libelant at Friday Harbor advised the Canning Company that thereafter all bills would be charged to the boats, but was told by the representative of the Canning Company that the company would pay the bills. Prior to 1919, all supplies furnished to the launches, including the claimant's, was paid by the Canning Company. The libelant, upon receiving checks from the Canning Company on account, credited the amount to the oldest account, and, when the fishing company finally failed to pay, asserted a lien against the launches whose supplies were not paid.

Do the facts establish a maritime line under Act of June 23, 1910, 36 Stat. 604 (Comp. Stat. §§ 7783–7786)? Section 1 of the act, supra, provides:

"That any person furnishing * * * supplies * * * to a vessel * * * upon the order of the owner * * * or of a person by him * * * authorized shall have a maritime lien * * * and it shall not be necessary to * * * prove that credit was given to the vessel. * * *"

Section 3 of the act, supra:

"* * * But nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party * * * or for any other reason, the person ordering the * * * supplies * * * was without authority to bind the vessel therefor. * * *"

Section 4 of the act, supra:

"Nothing in this act shall be construed to prevent a furnisher of * * * supplies * * * from waiving his right to a lien at any time, by agreement or otherwise. * * *"

Prior to May 5, 1919, admittedly libelant knew that the Canning Company was without authority to bind the vessel for supplies. Upon this date notation was made upon the ledger, and thereafter the agent of the libelant advised the president of the Canning Company that the charge on the books of the company would be made against the vessel. The arrangement between the libelant and the Canning Company, in force for five years with relation to furnishing the fuel and supplies to the claimant's launch, was thus changed. Libelant knew that the Can-

ning Company was without power to bind the vessel, and knew that the same relation obtained between the Canning Company and the claimant for the year 1919 with relation to the use of the launch, and furnished the fuel and supplies with this knowledge. Demand was made upon the Canning Company for the amount of the fuel and supplies furnished, and it was not until after a failure to collect from the Canning Company that demand was made upon the claimant. Ely v. Murray & Tregurtha Co., 200 Fed. 371, 118 C. C. A. 520. It is true that the statement was sent to the Coaster, °/₀ San Juan Canning Company, and was received by the Canning Company, in whose possession it was, but this fact does not vest authority to bind the launch.

The presumption of the statute may unquestionably be removed, and the right of lien based upon it destroyed by proof which overcomes it. The Patapsco, 80 U. S. (13 Wall.) 329, 20 L. Ed. 696. This proviso is merely a statutory declaration of a principle long recognized in maritime jurisprudence and announced by the Supreme Court in The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, and The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710. No one with knowledge that fuel or supplies are ordered by one without authority acquires a lien, and one cognizant of circumstances which suggest inquiry may not close his eyes and avail himself of presumptions of the law. Under these circumstances a lien may not be impressed.

There is no question as to whom credit was given prior to 1919 for fuel and supplies furnished to the same launch, nor can it be reasonably asserted that the credit was not primarily extended to the Canning Company in 1919. That credit was primarily extended to the Canning Company, or the lien waived by demand upon the Canning Company for many months, is shown by the letter, supra, and is fatal to the right of lien. The Millinocket (D. C.) 266 Fed. 392.

The facts in this case are distinguished from those in the cases cited by libelant, in that in the instant case there was a full and complete understanding between the libelant and the Canning Company, and the authority which the Canning Company had to bind the vessel, which understanding had been carried out for a period of five years and was continued for 1919, except as to the manner of bookkeeping, and not until July, 1920, when demand was first made upon the claimant for the supplies furnished the preceding year, was he advised of the claim for lien.