### HUPPER v. HYDE.

(Circuit Court of Appeals, Fifth Circuit.    January 31, 1924.    Rehearing Denied March 14, 1924.)

No. 4199.

I. **Appeal and error** &#9756;773(2)—**Dismissal for failure to file briefs in time discretionary.**

Compliance with rule 24 as to filing briefs is not jurisdictional, and dismissal for failure of appellant to file briefs within the time prescribed is discretionary with the court.

2. **Admiralty** &#9756;106—**Failure of surety to join in appeal held not to require dismissal.**

Failure of the surety on a bond given for release of a libeled vessel to join in appeal from a decree against claimant and the surety, and which also dismissed a cross-libel filed by claimant, *held* not to require dismissal of the appeal.

&#9756;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Towage ⬤⇒9—Tug held to have lien for towage service rendered.**

> Owner of a tug *held* to have a maritime lien under the general maritime law on a barge for towage service rendered under a contract between the master of the tug and the master of the barge, made in a foreign port.

Appeal from the District Court of the United States for the Southern District of Florida; Henry D. Clayton, Judge.

Suit in admiralty by Louise G. Hyde against the barge Smith Terry No. 1; Roscoe H. Hupper, trustee in bankruptcy of the Cuban Atlantic Transport Corporation, claimant. Decree for libelant, and claimant appeals. Affirmed.

W. E. Kay, Thos. B. Adams, and Reuben Ragland, all of Jacksonville, Fla. (Kay, Adams & Ragland, of Jacksonville, Fla., and Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, on the brief), for appellant.

Sam R. Marks, E. O. Locke, and Francis M. Holt, all of Jacksonville, Fla. (Marks, Marks & Holt, of Jacksonville, Fla., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

CALL, District Judge. On March 1, 1920, appellee, hereinafter called libelant, exhibited her libel against the barge Smith Terry No. 1, claiming $9,500, and the barge was seized under the attachment issued thereon. The Cuban Atlantic Transport Corporation filed claim and stipulation, with the American Surety Company of New York as surety, in the sum of $12,000, and the barge was released. March 22, 1920, an amended libel was filed against the Cuban Atlantic Transport Corporation, the claimant, and the American Surety Company of New York, the surety upon the stipulation.

It is alleged, among other things, that on December 25, 1919, a towing agreement was entered into by the libelant with Marcelino Garcia S. en Ca., of 90 Wall street, New York City, for the steam tug Admiral Dewey to proceed with all due dispatch from the port of Jacksonville, Fla., fully equipped in seaworthy condition to Key West, Fla., and there take in tow a certain barge to be furnished by said Marcelino Garcia S. en Ca., and with all due dispatch thence to tow the same to New Orleans, La., and from there shall tow said barge to any port in Cuba and from there to Savannah, Ga. The consideration to be paid for said service being $350 per day, for each and every day said tug shall be engaged in said service, commencing the day the tug leaves Jacksonville, Fla.; the payments to be made on the arrival of the tug at Key West, upon arrival at New Orleans, upon arrival at a Cuban port, and at the port of Savannah. Each vessel was required to pay its own expenses, port charges, harbor dues, etc. No hire was to be paid the tug for days during which delay is occasioned by its breaking down, or deviating from said voyage, unless such deviation is caused by stress of weather, and is for the safety of both tug and barge.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The amended libel then alleges the performance of the towage serv-
ice to New Orleans, arriving there on January 15, 1920; that the tug
remained by the barge while she was being unloaded; that, due to cer-
tain negotiations, the towage to a Cuban port and thence to Savannah
was abandoned, and the towage of said barge to Charleston was on
January 22, 1920, undertaken, at the same price and upon the same
terms as the original towage agreement. It is then alleged that heavy
weather was encountered on the voyage which, with an accident to the
boiler of the tug, caused delay; that, owing to the failure of claimant
to pay the amount due for towage, the voyage was abandoned at May-
port, Fla., and libel filed.

Subsequently Roscoe H. Hupper, the appellant, as trustee in bank-
ruptcy of the Cuban Atlantic Transport Corporation, was allowed to
answer and file a cross-libel in said cause. On July 30, 1921, the ap-
pellant filed a cross-libel, claiming that the bankrupt was the party
making the towage agreement; that prior to making said towage agree-
ment the tug Admiral Dewey was represented by the owners of said
tug to be fitted and equipped and had the power and capacity to tow the
barge Smith Terry No. 1, laden with cargo, between the United States
and Cuban ports at a normal speed of eight knots an hour under or-
dinary conditions; that the towage agreement was entered into be-
cause of said representations; that said representations were false;
that because of these misrepresentations the claimant canceled the con-
tract of towage upon the arrival at New Orleans; that in order to
minimize the damages suffered by reason of the misrepresentations,
and upon the representations that the tug was fully capable of perform-
ing the service, arranged to have the tug tow the barge light from New
Orleans to Charleston, S. C., upon the same terms as the original tow-
age contract; that the tug did not pursue the voyage with all due dis-
patch, but willfully, wrongfully, and unnecessarily delayed and pro-
longed said voyage, so that long periods of time were lost in the use
of said barge by claimant. Thirty-one days and 12½ hours delay is
then claimed as damages; also damages are claimed for delay and
expense in having barge towed from Jacksonville to Savannah; dam-
ages to the cargo of sugar on account of the delay in reaching New
Orleans; amounts expended for the tug pilotage, harbor and dock-
age fees, and for assistance rendered tug in bringing the barge up the
river to New Orleans; and he claims $18,951.20 from libelant. On
July 30, 1921, an answer was filed by appellant, alleging the payment
of $9,050, and alleging virtually the claims set up in the cross-libel as
an offset offering to reduce the amount. The answer of libelant to
the cross-libel was filed August 5, 1921.

The cause came on for final hearing upon the amended libel as
amended, the answer thereto, the cross-libel and answer thereto, and
the testimony. A decree was entered in favor of the libelant against
the appellant and the surety company for $8,735, on February 24,
1923. On February 26th a further decree dismissing the cross-libel
was entered. Hupper, as trustee in bankruptcy of the claimant and
cross-libelant, filed his petition for appeal, in which the surety on the
claim bond joined. Upon this petition an order was made allowing
the appeal and fixing the supersedeas bond at $3,000. This bond was

given and approved, with Hupper as principal and the bonding company as surety.

[1] The appellee filed her motion to dismiss, first, for failure of appellant to file briefs within the time prescribed by the rules. Each party had filed their briefs before the hearing, and at the hearing the appellee was given leave to file a supplemental brief, which was done. No harm resulted to appellee from the failure of the appellant to file briefs within the time required by the rules. Compliance with rule 24 as to filing briefs is not jurisdictional, but the cause may be dismissed on motion. The present case is not one calling for the drastic enforcement of the rule.

[2] The second and third grounds of the motion are that the American Surety Company of New York does not appear as an appellant. It is true that in Winters v. United States, 207 U. S. 564, 28 Sup. Ct. 207, 52 L. Ed. 340, Justice McKenna says:

"The rule which requires the parties to a * * * decree to join in an appeal * * * or be detached from the right by some proper proceeding * * * is firmly established. * * * But the rule only applies to joint * * * decrees."

In the instant case it is true the decree is joint, yet as pointed out in the above case the rights of the parties are several. The surety company is bound by the decree to pay the amount found due the appellant, but is not interested, except incidentally, in the claims propounded by the cross-libel, which was dismissed; and this decree of dismissal is brought here for review, as well as the decree for libelant. We do not think grounds 2 and 3 of the motion justify a dismissal.

The fourth ground of the motion is for want of a good and sufficient appeal bond. The bond shown in the record is executed by the appellant, Hupper, as principal, and the American Surety Company of New York, as surety. This is a sufficient compliance with the order allowing the appeal.

The fifth ground is necessarily based upon the existence of either the second, third, or fourth grounds, and, as these have been found not sufficient to oust this court of jurisdiction, it falls with them. The motion is denied.

[3] The assignments of error are 22 in number. The sixth, seventh, eighth, ninth, and tenth assignments challenge the finding of the trial court that the libelant had a maritime lien for the towage service rendered. These assignments are not well taken. The facts appearing from the record bearing upon this question may be shortly stated as follows: The libelant entered into a towage agreement with Marcelino Garcia S. en Ca., for the services of the tug Admiral Dewey to make a voyage with a certain barge, not named, in tow from Key West to New Orleans; thence to a Cuban port; thence to Savannah. The voyage from Key West to New Orleans was completed, whereupon the voyage from New Orleans to a Cuban port was abandoned, apparently in order to have the barge hauled out and bottom repaired, and then the Cuban Atlantic Transport Corporation, through the captain of the barge and an agent of said corporation, arranged with the master of the tug to tow the barge light from New Orleans to Charles-

ton, S. C.; the pay for the service and the terms the same as in the agreement with Garcia S. en Ca.

The tug in a foreign port, through its master, at the request of the master of the barge, makes a contract of towage and performs it in part. A maritime lien attaches to the tow under the general maritime law, and is not dependent upon the Act of Congress of June 23, 1910 (36 Stat. 604). There are no proofs that the service was rendered upon the credit of claimant to displace the lien which arises upon the performance of a maritime service, necessary for the vessel to complete her voyage, rendered in a foreign port. The Patapsco, 13 Wall. 329, 20 L. Ed. 696. The testimony shows an interest in the barge and cargo in the claimant for the first time after the completion of the voyage to New Orleans. The owner of the tug seems to have been unaware of the change of voyages until after the tug had commenced the voyage with the tow to Charleston. There was no error in the trial court decreeing a maritime lien for the towage service rendered the barge.

The eleventh, twelfth, seventeenth, and eighteenth assignments challenge the findings of the trial court that the Admiral Dewey was seaworthy. These assignments are not well taken. The only testimony apparently to sustain the contention of claimant and cross-libelant is the speed made by the tug, the entry into ports, and the length of the voyage. These are not sufficient, when considered with the other testimony, to authorize the court to find the tug unseaworthy.

The thirteenth, fourteenth, fifteenth, and sixteenth assignments are based upon the failure of the trial court to find that the libelant made false representations to claimant and cross-libelant as to the condition, power, speed, and capacity of the tug, and that cross-libelant was misled by these to his damage, and found that the claimant entered into the contract of towage with knowledge of the tug's capacity. These assignments are not well taken. As noted before, the voyage to New Orleans had been completed. All parties must have been fully cognizant of the condition, power, speed, and capacity of the tug to perform the service contemplated in the voyage from New Orleans to Charleston. At least, they had ample opportunity to know, and with this knowledge, or opportunity to know, the tug was engaged to perform the service. The master of the barge seems not to have discovered that the tug was too small to perform the service until examined as a witness.

The nineteenth, twentieth, and twenty-first assignments challenge the findings of the trial court that the delays on the voyage and putting into ports were due to heavy weather. As pointed out in the opinion of the trial judge, the testimony of the parties and the entries in log books of the two vessels show the condition of the weather encountered on the voyages, and bear out the contention of libelant, and this testimony seemed to him more reliable than reports from the Weather Bureau records. It seems the same to us. There was no error in such findings.

The twenty-second assignment challenges the action of the court in not requiring a bond from libelant on the claims made in the cross-libel. Under the circumstances shown in the record there was no error in the order.

The first, second, third, fourth, and fifth assignments are general in their allegations, and except to the court's action in granting the decree for libelant and dismissing the cross-libel, These assigments are not sustained by a careful review of the testimony in the case.

There is no reversible error and the decrees are affirmed.