## THE EVEROSA.

### No. 1705.

District Court, D. Rhode Island.

Feb. 1, 1937.

Archibald C. Matteson, of Providence, R. I., and Paul Johnston, of Birmingham, Ala., for libelant.

Raymond & Semple, of Providence, R. I., and P. A. Beck, of New York City, for claimant.

MAHONEY, District Judge.

The Southern Coal & Coke Company filed its libel in the District Court of the United States for the District of Rhode Island on the 24th day of November, A. D. 1934, to establish its right to a maritime lien in rem on the steamship Everosa, in a cause of contract, civil and maritime, for coal sold and delivered into the bunkers of said steamship on the 22d day of Novem-

ber, A. D. 1933, and on the 8th day of May, A. D. 1934, at the Port of Mobile in the District of Alabama. The return of the United States Marshal shows that the vessel was seized on the 26th day of November, A. D. 1934.

F. Grauds Kugniecibas, AKS. SAB., a corporation of the Republic of Latvia, has entered its claim to said vessel and prays that it be delivered to it forthwith. The claimant has filed a stipulation agreeing to pay the amount of the final decree of the court, and has given bond for the release of said vessel.

The parties hereto have filed an agreed statement of facts.

On the 16th day of August, A. D. 1934, the claimant purchased said vessel while it was at Rotterdam, Holland. Prior to that time, the name of said vessel was the Munorway, under the Norwegian flag, hailing from Oslo, Norway, and registered in the name of a Norwegian Registered Company as owner.

The capital stock of the Norwegian Company was 300 shares. Three of these belonged to certain Norwegians and 297 of them belonged to the Munson Steamship Company of New York, a corporation, having a place of business in the city of New York. There was no interchanging of officers or directors between these two companies. The Munson Steamship Company did not have legal title to the S. S. Munorway, nor was it registered in the name of said steamship company. However, the steamship company did have a mortgage on the vessel, and at the time of the sale of said vessel to said claimant consented to the sale of said vessel and gave evidence of the satisfaction of the mortgage to permit the sale of said vessel.

The Munson Steamship Company owned and operated about sixteen vessels in various parts of the world, the first part of the names of which contained the letters "Mun." Also it time-chartered five vessels, the names of which began with the letters "Mun."

On the 24th of October, A. D. 1933, the Munson Steamship Company time-chartered the Munorway for a period of three months. It was during the term of this charter that the coal was placed on board on the 22d day of November, A. D. 1933. Subsequently a charter was entered into on the 20th day of January, A. D. 1934, to run for one month. The said vessel was being operated under an informal extension of this charter party when the coal was placed on board on the 8th day of May, A. D. 1934.

On the 18th day of November, A. D. 1933, the Munorway was on a voyage and was expected to call at Mobile for the purpose of filling her bunkers. On that day the following telegram was sent from the New Orleans office of the Munson Steamship Company to the libelant at Boothton, Ala., where the libelant had its coal:

"Munorway Bunkers Will be Necessary Have 725 Long Tons Mobile Morning Twenty-second.

"Munson Steamship Line"

This telegram was confirmed by a long-distance telephone message in which the libelant was informed that there was some doubt as to the time the Munorway would arrive at Mobile, and that the libelant could not be given the date the coal was to be in Mobile until definite information had been received from the master of the Munorway.

On the 20th and 21st days of November, A. D. 1933, the coal for this bunkering was shipped at Boothton and delivered to the vessel on the 22d day of November, A. D. 1933.

It is agreed that Mr. R. L. Brandt was the representative of the libelant at Mobile at this time and he says that on the 22d day of November, A. D. 1933, the master of the vessel orally ordered the coal for this bunkering from him at Mobile.

After the coal had been delivered into the bunkers of the vessel, the master and engineer signed receipts for it, and a bill was rendered to the master, who thereupon drew a draft for the payment on the "Munson Steamship Line owners 'S. S. Munorway,' 67 Wall Street, New York City," dated November 22, 1933.

It is also agreed that this coal was necessary for the vessel to allow it to proceed on the voyage upon which it was then engaged and was so used by it.

On the 2d day of May, A. D. 1934, the libelant received at Boothton from the New Orleans office of the Munson Steamship Company the following telegram:

"Munorway Will Require At Mobile About Eight 550 Long Tons Bunkers

"Munson Steamship Line."

The libelant acknowledged receipt of this order by letter dated the 2d day of May, A. D. 1934.

This coal was shipped from Boothton. The master gave Mr. Brandt a written requisition for 574.15 tons of coal and that amount was delivered into the bunkers of the vessel, a bill presented to the master, who drew a draft on "Munson Steamship Line, owners S. S. Munorway, 67 Wall Street, New York City."

Among the exhibits referred to in the agreed statement of facts is one marked Exhibit E (1). Therein the master states that:

"I certainly did not personally order the coal from the Coal Company. I did not even tell them what quantity I required; this was all done by Munsons own people at New Orleans and Mobile.

"Requesition Form.

"This letter was written by Munsons own Typewriter at their office in Mobile and by their order I signed same and delivered it to them. The draft was given to Munsons own Manager at Mobile. No question was asked with regards to the voyage. Whether the November coal was handled in a different way then the May coal, I do not remember.

"Everything and all of this business was transacted by Munson s. s. Line own office at New Orleans and at Mobile, by order from the Head Office at New York and I certainly had nothing to do with ordering the bunkercoals.

"The steamer was on Timecharter for the Munson s. s. Line. They and nobody else are responsible for the expences."

In the answers to the interrogatories propounded to the libelant by the claimant and annexed to the claimant's answer and marked (Interrogatory No. 6 (a) is a letter signed by C. W. Munson, Chairman:

"We agree that the acceptance by you of our note, as shown below, for part payment for bunkers supplied by you for the s/s MUNORWAY, shall be without waiver and prejudice to any lien upon said vessel to which you were entitled under your original thirty day draft amounting to $2,854.33 due December 22, 1933.

"Yours very truly,
"C. W. Munson, Chairman
"P. S. Upon presentation of your
draft for $2,854.33 we will deliver a check for cash in the
amount of.................. $1,000.00
"Our promissory note payable 60
days after date for.......... $1,854.33"

and a letter marked (Interrogatory No. 6 (b) signed by C. W. Munson, chairman:

"We agree that the acceptance by you of our note, as shown below, for part payment for bunkers supplied by you for the SS MUNORWAY, shall be without waiver and prejudice to any lien upon said vessel to which you were entitled under your original sixty day note amounting to $1854.33 due February 20, 1934.

"Yours very truly,
"C. W. Munson, Chairman
"P. S. Upon presentation of our
promissory note for $1,854.00,
we will deliver a check for cash
in the amount of............ $ 453.33
promissory note payable 60
days after date for.......... 1400.00"

and a letter marked (Interrogatory No. 6 (c) signed by C. W. Munson, chairman:

"We agree that the acceptance by you of our note, as shown below, for part payment for bunkers supplies by you for the SS MUNORWAY, shall be without waiver and prejudice to any lien upon said vessel to which you were entitled under your original sixty day note amounting to $1400.00, due April 23, 1934.

"Very truly yours,
"C. W. Munson, Chairman
"P. S. Upon presentation of our
promissory note for $1400.00,
we will deliver a check for
cash in the amount of....... $ 414.47
promissory note payable 60
days after date for.......... 1000.00"

On the 16th day of April, A. D. 1933, the libelant and the Munson Steamship Company entered into an agreement, a copy of which is attached to the answers to interrogatories propounded to the libelant by the claimant and annexed to claimant's answer in answer to Interrogatory No. 3. It is dated at Boothton, Ala., April 16, 1933, and is described as an

"Agreement for the Purchase of Coal
Between

"Munson Steamship Company. Buyer
New Orleans, La.
and
Southern Coal & Coke Co., Seller,
Boothton, Alabama."

It is therein recited that

"The buyer agrees to buy, and the seller agrees to sell Coal in the amount and upon

the terms and conditions herein specified.

Duration
of Contract  Beginning April 16, 1933, and
Ending April 15, 1935.
Quantity  Requirements, Estimated 10,-
000 to 25,000 Tons per year.
Price  $1.25 per net ton F.O.B. cars
Boothton, Alabama.
Terms  All coal to be paid for on the
10th of each month for coal
shipped during preceding cal-
endar month.

"If the credit of the purchaser at any time in the judgment of the seller becomes impaired, the seller shall have the right to require payment for all the Coal previously shipped, and in advance for all to be thereafter shipped, before making further shipments."

This agreement for the purchase of coal between the Munson Steamship Company and the Southern Coal & Coke Company, was in full force and effect when the coal mentioned in this case was furnished to the Munorway.

Before the libel in the instant case was filed, the Munson Steamship Company had filed a petition for reorganization under the provisions of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), and a claim had been filed against the Munson Steamship Company in the United States District Court for the Southern District of New York. This claim was withdrawn, and thereafter another claim against the Munson Steamship Company for coal supplied to the Munorway was filed with the trustees for the Munson Steamship Company in the proceedings for reorganization with a reservation of the right to the lien which is the subject of the libel in the instant case.

The statutes providing for a maritime lien are set forth in 46 U.S.C.A. §§ 971, 972 and 973, and are as follows:

"§ 971. Persons entitled to lien. Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"§ 972. Persons authorized to procure repairs, supplies, and necessaries. The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel.

"§ 973. Notice to person furnishing repairs, supplies, and necessaries. The officers and agents of a vessel specified in subsection Q, section 972, shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

The answer of the claimant states that certain payments have been made on account of the amounts demanded in the petition for libel, leaving an unpaid balance of $3,216.22.

The claimant further sets up the defense that the coal which had been placed on board the S. S. Munorway was sold to the Munson Steamship Company under the terms of the contract hereinbefore referred to, and upon the credit of the said Munson Steamship Company and not upon the credit of the said S. S. Munorway, or her owner, and in support of such defense it is averred in said answer that at the time said coal was placed on board the S. S. Munorway the libelant accepted drafts for thirty days on said Munson Steamship Company. At the time the payment was due on said drafts the libelant accepted part payment and new notes for the balance of the purchase price.

As a further defense, the claimant avers in its answer that the said vessel was under a charter party to the said Munson Steamship Company, and that the charter party contained the following clause, namely: "That the charterer shall provide and pay for all coals. * * *"

The claimant also set up the defense of laches.

The question here is whether there has been a furnishing of necessaries within the

provisions of the statutes to which reference has hereinbefore been made. It is clear that the coal was furnished to the vessel on the two occasions recited in the petition for the libel. But the determining question is: Was the coal furnished by the libelant, the Southern Coal & Coke Company, or was it furnished by the Munson Steamship Company?

At the time that the coal was delivered to the vessel on the two occasions recited in the petition for libel, the agreement for the sale of coal by the libelant to the Munson Steamship Company was in existence. The agreement was made in Alabama and the performance under it was carried out in Alabama. The coal was delivered to the railroad "F.O.B." at Boothton, Ala.

The Uniform Sales Act, General Laws of Alabama 1931, p. 570, provides that when goods in bulk are appropriated to a contract title passes from the seller to the buyer, and that when goods are delivered to a carrier for transportation to the buyer, title passes from the seller to the buyer. Under the terms of this act the title to the coal when it was placed on the cars "F.O.B. Boothton" became the property of the Munson Steamship Company. The title then passed to the Munson Steamship Company. The carrier became its agent for the purposes of transportation.

This is clear under the authorities of Alabama as of other jurisdictions. See Guarantee Title & Trust Company v. First National Bank (C.C.A.) 185 F. 373; Luhrig Coal Co. v. Jones & Adams Co. (C.C. A.) 141 F. 617; In re Arctic Stores (D.C.) 258 F. 688.

It is true that the correspondence between the libelant and the Munson Steamship Company, after the presentation of the original drafts, reveals an agreement that the acceptance of the notes for part payment "shall be without waiver and prejudice to any lien upon said vessel to which you were entitled." But this is an attempt to establish a lien where none existed ab initio.

The agreement for the purchase of coal in the instant case contains no provision as to liens. There is no stipulation that the liability of any vessel was to remain in effect. There is nothing therein contained which refers to the coaling of any vessel whatsoever. This was not a sale on the credit of the vessel. The Munson Steamship Company could have applied the coal "F.O.B. Boothton, Ala." to any purpose other than maritime. It applied the coal to furnishing the "S. S. Munorway," but it might have applied it to anything else. It owned the coal. Since it did own it, the libelant did not. The libelant did not furnish it within the meaning of the above recited acts. The Defiance (D.C.) 3 F.(2d) 48; The Vigilancia (D.C.) 58 F. 698.

In the case entitled Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 41 S.Ct. 1, 4, 65 L. Ed. 97, the court says: "The act relieves the libelant of the burden of proving that credit was given to the ship when necessaries are furnished to her upon order of the owner, but it in no way lessens the materialman's burden of proving that the supplies in question were furnished to her by him upon order of the owner or of some one acting by his authority. The maritime lien is a secret one. It may operate to the prejudice of prior mortgagees or of purchasers without notice. It is therefore stricti juris and will not be extended by construction, analogy or inference."

It is not in evidence that the said Munson Steamship Company at the time the coal was delivered was insolvent. It was a large active company, well known to the libelant. The agent of the libelant had long sought to obtain the business of the steamship company for the Southern Coal & Coke Company under contract agreement. When the agreement was entered into, definite terms of payments and arrangements for credit to the Munson Steamship Company were clearly defined and nominated in the agreement. It was sometime after the agreement had been entered into and the coal had been delivered, and before the petition for libel had been filed in the District of Rhode Island that a petition for relief and authorization to effect a plan of reorganization under the provisions of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) had been filed in the United States District Court for the Southern District of New York. The Patapsco, 80 U.S. (13 Wall.) 329, 20 L. Ed. 696, is patently distinguishable from the instant case.

The conclusion is that the coal was furnished by the said Munson Steamship Company. It is equally clear that it was not furnished by the libelant. It is not necessary to consider the other defenses.

The petition for libel is dismissed with costs to the claimant.