**AMERICAN STEVEDORES, Inc.**

v.

**THE TRAJAN.**

No. 20201.

United States District Court,
E. D. New York.

Feb. 16, 1954.

Frankel & Frankel, New York City, for libelant, by Herman Frankel, New York City, advocate.

Haight, Deming, Gardner, Poor & Havens, New York City, for claimant, by John C. Moore, and Tallman Bissell, New York City, advocates.

BYERS, District Judge.

The claimant has filed exceptions and exceptive allegations to a libel against the Norwegian S/S Trajan, to recover for stevedore services rendered under contract with the charterer of the ship.

The matters so presented fall within local Admiralty Rule 21 and the cause is therefore appropriate for disposition as therein contemplated. There is no apparent dispute as to the facts, but argument is made concerning the legal effect to be attributed to them. In other words, if the cause were to proceed to a hearing, the following would emerge as the ultimate facts:

A. The ship is of Norwegian registry, and during the period between September 10, 1953 and January 7, 1954 was owned by the claimant Aksjerederiet Julian, a corporation of Norway.

B. During the dates mentioned she was under charter to Marine Transport & Terminal Co. S.A. (to be called Marine) of which Bercovici Navigation Agency, Inc. (to be called Bercovici) was the agent of the charterer in New York.

C. The charter party bears date of March 17, 1953 and was entered into in New York between the then owner Hillmar Reksten and the said charterer. The date of transfer of title to the ship has not been stated, but it is not asserted to have been later than September 10, 1953, when the stevedoring services alleged in Article 4 of the libel were begun in the Port of New York.

D. The master of the ship then, and at the filing of the libel, was Thorleif Wibe.

E. The charter contains the following provision:

"* * * Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents which might have priority over the title and interest of the owners in the vessel."

A true copy of the charter at all times material to this controversy was in possession of the said master on the ship.

F. The stevedoring contract between libelant and Bercovici pursuant to which the stevedoring services were rendered which are described in the libel, bears date of June 15, 1950. Bercovici is therein described as "Owner, Agent or Charterer."

G. The said contract for present purposes was between libelant and Bercovici as agent for the charterer above named.

H. The libelant did not at any time between the dates named in "A" above visit the S/S Trajan while she was in this port, and interrogate her master Wibe concerning any aspect of the relationship between the charterer and the owner; nor ask to examine the copy of the charter which was in his custody and possession.

I. The said stevedoring services were not performed at the request of the said master directly or indirectly.

J. For present purposes it is assumed that on August 11, 1953, Gans, the comptroller of libelant, called upon Lazar Bercovici in the office of his company, herein called Bercovici, of which he is president. He is also president of Marine, the charterer of the S/S Trajan. It is likewise assumed that Gans discussed monies due for work done under the contract referred to in "F" on sundry vessels, including the S/S Trajan, and that Bercovici stated the reasons why he could not make payments then due for sundry stevedoring services.

Gans asked to examine the charter of the S/S Trajan and his request was declined with the observation that the contents were confidential (presumably to the owner and the charterer).

K. The libel alleges in part:

"Upon order of the aforesaid S.S. Trajan and her master and other representatives in whose custody

the vessel was entrusted by the owner, and who had authority for the said purpose, the Libelant did certain work, etc., * * * (stevedoring) necessary to maintain the said vessel in proper condition for navigation * * * between September 10, 1953 and January 7, 1954."

It being deemed that as the result of a hearing the testimony would yield evidence only of matters comprehended in the foregoing, it will be seen that the question for decision is whether the libelant has demonstrated its right to impose a maritime lien on the vessel, for the stevedoring services which it rendered under contract with the charterer.

It is thought that the question would not be reached of whether such services are properly the subject of a maritime lien (statutory or otherwise) until it be first determined whether any engagement, express or implied, on the part of the ship can be spelled out of the foregoing recital. The deficiency of proof on that subject does not admit of extended discussion.

The sole inquiry was made of the charterer or its agent, and no attempt to ascertain from the master or other person who could speak for the owner, whether an engagement for these services on claimant's part was undertaken or authorized, appears in the affidavits filed in opposition to the motion.

The following cases make clear that a lien cannot attach to a vessel unless services or materials relied upon to support it, were ordered by the master or the owner, the ship being under charter, which forbids the creation of such a lien by the charterer: The St. Jago de Cuba, 9 Wheat. 409, 6 L.Ed. 122; The Kate, 164 U.S. 458, 17 S.Ct. 135, 41 L. Ed. 512; The Valencia, 165 U.S. 264, 17 S.Ct. 323, 41 L.Ed. 710; The Suliote, D.C., 23 F. 919; The Chicklade, D.C., 120 F. 1003. Cf. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, at page 12, 41 S.Ct. 1, 65 L.Ed. 97; The Golden Gate, 9 Cir., 52 F.2d 397, is not to the contrary.

The Valencia contains an interesting discussion of cognate cases, and in distinguishing the Patapsco, 13 Wall. 329, 20 L.Ed. 696, it is said:

"Nothing, however, was said in that case to justify the contention that a lien will arise for necessary supplies furnished a vessel, in a foreign port, on the order of a charterer, if the libelant at the time knew, or by reasonable diligence could have ascertained, that it was being run under a charter that obliged the charterer to provide and pay for all needed supplies." 165 U.S. at page 269, 17 S.Ct. at page 325.

And again, 165 U.S. at page 272, 17 S. Ct. at page 326:

"We mean only to decide, at this time, that one furnishing supplies or making repairs on the order simply of a person or corporation acquiring the control and possession of a vessel under such a charter party, cannot acquire a maritime lien, if the circumstances attending the transaction put him on inquiry as to the existence and terms of such charter party, but he failed to make inquiry, and chose to act on a mere belief that the vessel would be liable for his claim."

In The Kate, supra, which was a foreign ship sought to be charged for fuel supplied in New York where her charter provided that the charterer should bear that expense, the court, 164 U.S. at page 465, 17 S.Ct. at page 138, stated:

"As the charterer had agreed to provide and pay for all coal used by the vessel, he had no authority to bind the vessel for supplies furnished to it. His want of authority to charge the vessel for such an expense, was known or could have been known to the libelant by the exercise of due diligence on its part. Under the circumstances, the libelant was not entitled to deliver the coal on the credit of the vessel, and its attempt to hold the vessel liable is in bad faith to the owner."

The libelant's version of the interview as stated in paragraph "J" above is (Gans affidavit of January 27, 1954):

"Your deponent then asked Mr. Bercovici to permit him to look at his records including various charters to verify that fact (namely Bercovici's indebtedness to ship owners under charter parties), since your deponent was relying upon the credit of the vessels worked by libelant, as well as the credit of the charterers."

Since the stevedoring work was being done under a contract with Bercovici which by then was more than three years old, and the charter of The Trajan bears date of March 13, 1953 or about five months prior to the interview of August 11, 1953, the quoted statement of alleged reason is less than convincing. Nor does the affidavit aver that Mr. Gans was making a request of the charterer as agent or representative of the owner.

Since his contract was with the charterer, he could not hope to secure an undertaking on the part of the owner from any one but the latter, or the master of the ship. That much ought to be clear, in absence of a showing of joint capacity as charterer and owner, which seems to have been the situation in The Dana, D.C., 271 F. 356.

Following that interview, libelant had to elect whether to abandon working for Bercovici because of the latter's financial shortcomings, or seek to enter into contractual relations with the ship, by appropriate arrangement with the master. The failure to follow the former course cannot be interpreted into the equivalent of adopting the latter by any such showing as the libelant's affidavits portray. The showing is purely argumentative, namely that the effort to see the charter from which the undertaking quoted in "E" above would have disabused the libelant's mind of any capacity of the charterer to shift its burdens to the ship, would have been futile because the master would have refused to exhibit the document.

The controlling fact is that no such effort was undertaken, and the argument as to what would have happened had the request actually been made is incapable of demonstration.

What would have happened is just not susceptible of proof by any rational process.

It is therefore idle to pursue so much of the argument for it fetches up nowhere, and it matters not whether one is to believe the master's affidavit that he would have complied with the request had it been made, or the opposing verified statements of an asserted custom to the contrary, based upon years of observation from the stevedore's experience in similar circumstances.

It results that no basis was laid for a lien upon The Trajan to secure the value of the services rendered by the stevedore under a contract between it and the charterer of the ship.

The contract between the owner of this vessel and her charterer cannot thus be set aside since it clearly appears that this libelant did not conduct the inquiry that was open to it concerning the terms of this charter party, and there is no basis for considering that if it had, the lien asserted in the libel would have come into existence.

The cases cited by libelant have been examined but do not aid its cause:

In re Atlantic Gulf etc. Co., D.C., 3 F. 2d 309, is a bankruptcy cause in which the claim of the stevedores against the proceeds of freights claimed by a secured lender of the bankrupt was the sole subject decided.

El Amigo, 5 Cir., 285 F. 868, presents no question of who undertook to bind the ship.

Luckenbach v. Pearce, 5 Cir., 212 F. 392, is clearly inapposite since it appeared that the captain of one ship undertook to speak for another ship of the same ownership.

The motion to dismiss, is granted.

Settle order.